**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

March 20, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:   *Denise R. v. Frank Bisignano, Social Security Administration*
      Civil No. 1:25-cv-01816-JMC

Dear Counsel:

Denise Ralston ("Plaintiff") petitioned this Court on June 9, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in the case as well as the parties' dispositive filings. (ECF Nos. 12, 14, 15). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

## I.   Procedural Background

Plaintiff filed her first Title II application for DIB on September 23, 2019, alleging disability as of June 1, 2019. (Tr. 199-207).[1] The SSA initially denied Plaintiff's application on December 7, 2020. *Id.* at 105-08. After exhausting all administrative remedies, Plaintiff appealed her case. *Id.* at 2054-55.[2] On July 31, 2023, this Court remanded Plaintiff's case for further proceedings. *Id.* at 2046-2051. Thereafter, on September 26, 2023, the Appeals Council vacated the final decision and remanded the case to an ALJ for further proceedings. *Id.* at 2041-45.

On March 5, 2024, ALJ Clary Simmonds heard the case by way of a telephonic hearing. *Id.* at 1966-2009. On May 1, 2024, the ALJ denied Plaintiff's claims for DIB. *See id.* Plaintiff subsequently filed written exceptions to the ALJ's decision on June 26, 2024. *Id.* at 2134-37. On March 28, 2025, the Appeals Council granted Plaintiff's request for review. *Id.* at 1939-1943. Then, on May 21, 2025, the Appeals Council issued its own decision finding that Plaintiff had

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 7) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

[2] *Denise R. v. Kijakazi*, Civil No. 22-2243-BAH, 2023 WL 4898288 (D. Md. July 31, 2023).

been disabled since June 23, 2023, but not prior thereto. *Id.* at 1922-1935. Plaintiff filed the present action seeking a determination that she was disabled within the meaning of the Social Security Act since June 1, 2019, the alleged date of onset of her disability. (ECF Nos. 1, 12, 15).

## II. The ALJ's and Appeals Council's Decisions

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity "since the alleged onset date." (Tr. 1972). At step two, the determined that Plaintiff suffered from the following severe impairments: "multiple sclerosis; cervical disc degeneration with radiculopathy (Ex. 34F); cervical stenosis (Exs. 11F/148; 23F/12); lumbar radiculopathy (Ex. 34F); chronic pain syndrome (Exs. 47F; 52F/44; 57F/166); trochanteric bursitis of hips (Ex. 42F). Beginning on the established onset date of disability, August 14, 2023, the claimant has had the following severe impairments: "multiple sclerosis; cervical disc degeneration with radiculopathy (Ex. 34F); cervical stenosis (Exs. 11F/148; 23F/12); lumbar radiculopathy (Ex. 34F); chronic pain syndrome (Ex. 47F; 52F/44; 57F/166); trochanteric bursitis of hips (Ex. 42F); metastatic melanoma with left lower lung lobe wedge resection and lymph node dissection status post immunotherapy (Ex. 47F) (20 CFR 404.1520(c))." *Id.*

The ALJ also determined Plaintiff's major depressive disorder, bipolar disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), attention-deficit/hyperactivity disorder ("ADHD") and substance abuse addiction were non-severe. *Id.* at 1973. In making that determination, the ALJ reasoned,

> In understanding, remembering, or applying information, the claimant has no limitation. She alleged that she has memory issues so she can follow spoken instructions as long as they are not complicated. However, she follows written instructions well (Exs. 4E; 7E). At the consultative examination, the claimant's memory was intact (Ex. 28F/5). She has followed complex commands at treatment

visits. She has also been able to recall three out of three items immediately and at five minutes (Exs. 22F/2; 25F/10, 36, 71; 34F/4). Thus, I find that the claimant has no limitation in understanding, remembering, or applying information.

In interacting with others, the claimant has mild limitation. She checked the "No" box when asked in May 2020 whether she has any problems getting along with family, friends, neighbors, or others. but checked the "Getting Along With Others" box when asked to check any items that her illnesses, injuries, or conditions affect. However, in March 2021, she again checked the "No" box and did not check the "Getting Along With Others" box either. She reported shopping in stores and going to the laundromat on a regular basis. She gets along fine with authority figures. She also denied ever having been fired or laid off from a job because of problems getting along with other people. (Exs. 4E; 7E). At the consultative examination, the claimant had a neutral mood and intact affective range (Ex. 28F/5). She often demonstrated an anxious/depressed or irritated mood at mental health visits (e.g., Exs. 17F/57, 59, 62; 24F/71, 74, 77; 36F/1, 3, 5; 56F/27, 30, 95). However, she has generally demonstrated no abnormal affect or abnormal at treatment visits where her mental health was not being specifically assessed (e.g., Exs. 14F/9; 26F/12, 16, 38; 11F/62, 113). Accordingly, I find that the claimant has no more than a mild limitation in interacting with others.

With regard to concentrating, persisting, or maintaining pace, the claimant has mild limitation. She initially reported in May 2020 that she is unlimited in her ability to pay attention and finishes what she starts. In March 2021, she alleged that she can pay attention for only 10 to 15 minutes but she still finishes what she starts (Exs. 4E; 7E). At the consultative examination, the claimant's concentration was intact (Ex. 28F/5). She has been able to spell the word "world" forward and backward and demonstrated intact calculation at treatment visits (Exs. 22F/2; 25F/36, 71; 34F/4). Thus, I find that the claimant has no more than a mild limitation in concentrating, persisting, or maintaining pace.

As for adapting or managing oneself, the claimant has mild limitation. She alleged that she does not handle stress very well. While she does not like change, she is fine at handling changes in routine. While the claimant noted difficulties with personal care, they seemed to be premised on perceived physical, rather than mental, health issues. She reported driving, being able to go out alone, shopping in stores and by mail, doing laundry weekly, and washing dishes as needed. She is able to handle money; the only reason she cannot pay bills is because she has no money (Exs. 4E; 7E). At the consultative examination, the claimant's insight and judgment were intact (Ex. 28F/5). She has consistently demonstrated fair to good impulse control, judgment/reason, and insight when assessed at treatment visits (e.g., Exs. 14F/9; 26F/12, 16; 36F/1, 3, 5; 56F/27, 30, 95, 98, 17, 110, 120, 123, 128). She has not required any emergent care or hospitalizations due to her mental health since the alleged onset date. For these reasons, I find that the claimant has no more than a mild limitation in adapting or managing herself.

3

*Id.* at 1975.  At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations since June 1, 2019. *Id.* at 1977; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that prior to August 14, 2023, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she: can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch or crawl; can frequently handle, finger, and feel with the nondominant left upper extremity; can have no more than occasional exposure to fumes/dusts/odors/gases/poor ventilation and other pulmonary irritants and to extreme temperatures or vibration; must avoid hazards such as moving machinery and unprotected heights.

*Id.* at 1980.  In support of its RFC determination, the ALJ summarized many of Plaintiff's medical records with certain evidence from her own testimony. *See id.* at 1980-1992.  In contrast, the ALJ determined Plaintiff's RFC after August 14, 2023 as follows:

> After careful consideration of the entire record, I find that beginning on August 14, 2023, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she: can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch or crawl; can frequently handle, finger, and feel with the non-dominant left upper extremity; can have no more than occasional exposure to fumes/dusts/odors/gases/poor ventilation and other pulmonary irritants and to extreme temperatures or vibration; must avoid hazards such as moving machinery and unprotected heights. The individual requires the option to change positions for up to 15 minutes an hour if needed while remaining on task. The individual will be absent at times for up to a week and it might occur up to three times per year due to symptoms of the impairments.

*Id.* at 1992.  Since June 1, 2019, the ALJ found that the Plaintiff was unable to perform any past relevant work as a waitress, fast food worker, and a dining room attendant. *Id.* at 1995-96. Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that prior to August 14, 2023, Plaintiff could perform work as a Telemarketer with 160,000 jobs in the national economy, a toy stuffer with 4,000 jobs in the national economy, or a surveillance system monitor with 291,000 jobs in the national economy. *Id.* at 1997. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, between June 1, 2019, the alleged date of onset, until August 14, 2023. *Id.* at 1998.

Subsequently, on May 21, 2025, the Appeals Council made the following additional findings:

4

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date…

3. Since the alleged onset date of disability, June 1, 2019, the claimant has had the following severe impairments: multiple sclerosis; cervical disc degeneration with radiculopathy; cervical stenosis; lumbar radiculopathy; chronic pain syndrome; trochanteric bursitis of hips.

4. Beginning on the established onset date of disability, June 23, 2023, the claimant has had the following severe impairments: multiple sclerosis; cervical disc degeneration with radiculopathy; cervical stenosis; lumbar radiculopathy; chronic pain syndrome; trochanteric bursitis of hips; metastatic melanoma with left lower lung lobe wedge resection and lymph node dissection status post immunotherapy (20 CFR 404.1520(c)).

5. Prior to June 23, 2023, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

6. Prior to June 23, 2023, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she: can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch or crawl; can frequently handle, finger, and feel with the nondominant left upper extremity; can have no more than occasional exposure to fumes/dusts/odors/gases/poor ventilation and other pulmonary irritants and to extreme temperatures or vibration; must avoid hazards such as moving machinery and unprotected heights.

7. Since June 1, 2019, the claimant has been unable to perform past relevant work (20 CFR 404.1565).
…
11. The claimant was not disabled prior to June 23, 2023, within the framework of Medical Vocational Rule 201.28, from June 1, 2019 because there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a).

12. Since June 23, 2023, the severity of the claimant's malignant melanoma met the criteria of Listing 13.29B3 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.152).

13. The claimant has been disabled, as defined in the Social Security Act, since June 23, 2023, but not prior thereto.

*Id.* at 1931-32.  Plaintiff maintains that the Commissioner's denial of benefits from the period between June 1, 2019 and June 23, 2023 is unsupported by substantial evidence. (ECF Nos. 12, 15).

## III.   Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards.  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance."  *Id.* (other citation and internal quotations omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."  *Id.*

## IV.   Analysis

Plaintiff argues on appeal that the ALJ's decision warrants remand because the ALJ erred in finding that Plaintiff's mental health disorders "non-severe" at step two and the RFC assessment was not supported by substantial evidence because the ALJ failed to adequately incorporate the evidence of Plaintiff's mental health.  (ECF Nos. 12, 15).  For the reasons that follow, the ALJ failed to properly consider the Plaintiff's mental impairments in determining her RFC.  As such, I will remand the case.

Step two requires an ALJ to evaluate a claimant's mental impairments. 20 C.F.R. § 404.1520. The SSA evaluates mental impairments by using a specialized technique known as the "Psychiatric Review Technique" (the "PRT").  *See* 20 C.F.R. § 404.1520a.  Under the PRT, an ALJ must assess a claimant's abilities to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).  From there, the ALJ determines one of five applicable ratings, those being (1) no limitation, (2) mild limitation, (3) moderate limitation, (4) marked limitation, or (5) extreme limitation.  20 C.F.R. § 404.1520a(c)(4).  After applying the special technique, the ALJ must assess the claimant's RFC. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). "An RFC assessment is 'more detailed' than a special-technique analysis—to determine RFC, the ALJ must 'itemiz[e]' any functional deficits resulting from the limitations identified during the special-technique analysis." *Bereniced W. v. O'Malley*, Civil No. 23-1856-CDA, 2024 WL 3925082, at *2 (D. Md. Aug. 23, 2024).  As such, the ALJ "must do so even if they previously found that the claimant's mental limitations were 'mild.'" *Id.* (citing *Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 430 (W.D.N.Y. 2022)).

If the ALJ determines that an impairment is "not severe" at step two, the claimant will not be found to be disabled on that basis.  20 C.F.R. § 404.1520.  Still, the RFC assessment must consider even findings of mild limitations.  *Bereniced W.*, 2024 WL 3925082, at *2.  "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such

*minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). "Because ALJs are required to consider all of claimant's medically determinable impairments when assessing the claimant's RFC, including those that are not severe, courts have held that errors when determining a medically determinable impairment is not severe is harmless if the ALJ considers the not severe impairments in the ALJ's RFC assessment." *Hoyle v. Comm'r of Soc. Sec.*, 1:20-cv-00273-RJC, 2022 WL 680220, at *3 (W.D.N.C. Mar. 7, 2022) (collecting cases). As Plaintiff points out, the ALJ must build a logical bridge from the evidence to the paragraph-B findings and may not ignore material evidence that cuts the other way. *See Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659–60 (4th Cir. 2017); *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017).

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports her conclusion *and* build an accurate and logical bridge from [that] evidence to her conclusion.") (internal quotation omitted) (emphasis in original).

When the RFC assessment does not properly consider a claimant's non-severe impairments in determining the RFC, remand is warranted. *Hoyle*, 2022 WL 680220, at *4; *see also Mascio*, 780 F.3d at 636; *Patterson*, 846 F.3d at 659-60. Here, Plaintiff is correct that the ALJ acknowledge Plaintiff has major depressive disorder, bipolar disorder, anxiety disorder, PTSD, and ADHD, but found that each condition caused "no more than a minimal limitation" at step two. Tr. 1974-75.

Subsequently, the ALJ determined that Plaintiff "does not have any limitations in memory, completing tasks, concentration, and getting along with others as well as handling stress and changes in routine because her mental impairments are not severe." *Id.* at 1981. However, such a conclusion is undermined by evidentiary conflicts, as discussed in greater detail below. Moreover, the RFC assessment, while a summary review of the medical records, lacks any meaningful analysis concerning the Paragraph-B findings. Because the undersigned finds that the ALJ failed to properly consider the non-severe impairments in the RFC, it will be unnecessary to consider whether they were properly determined to be non-severe. *Hoyle*, 2022 WL 680220, at \*4; *Patterson*, 846 F.3d at 659-60.

First, Plaintiff correctly points to several evidentiary conflicts in the record not accounted for in the ALJ's RFC assessment (or step two analysis). The ALJ's conclusion that Plaintiff has "no limitation" in understanding, remembering, or applying information is in conflict with medical evidence indicating that Plaintiff makes "poor decisions" and "poor choices." Tr. 1276, 1279, 1282, 1285, 1289, 1293, 1401, 1405. Plaintiff indicated her depression causes her to self-isolate, that she rarely leaves her house, and that she does not care for anyone else including her husband, children, grandchildren, parents, friends, or pets. *Id.* at 249, 253. Other medical notes indicated that Plaintiff "rocked in her chair and kept her arms tightly around herself," which can be viewed as consistent with her mental health disorder diagnoses. *Id.* at 1282, 1285, 1289, 1293- 1294, 1297, 1405, 1408, 1411, 1414-1415, 1417. The ALJ does not engage in any meaningful analysis of such symptoms in the RFC assessment. Moreover, the ALJ failed to incorporate any discussion concerning how Plaintiff's mental health disorders, despite being found as non-severe, are supported by an RFC limitation to "sedentary work." Where the ALJ vaguely referenced the "non-severe" impairments, the ALJ indicated that the evidence was not consistent with the record as a whole. Tr. 1980. Based on the Court's review of the medical records, taken together with Plaintiff's testimony, further explanation would be necessary to engage in meaningful judicial review.

The Commissioner's arguments to the contrary are unpersuasive, as they do not account for the evidentiary conflicts in the record. Moreover, the Commissioner's reliance on *Shelley C.* is misplaced. *Shelley C. v. Commissioner*, 61 F.4th 341, 360 (4th Cir. 2023). As Plaintiff points out in the Reply brief, "the Fourth Circuit did not announce a narrow rule limited to decisions that use the absence of objective corroboration as the sole rationale. The Commissioner's attempt to narrow *Shelley C.* to cases "based entirely" on objective non-corroboration…ignores that *Shelley C.* rejected the very mode of analysis at issue here, i.e., using "benign" objective markers and treatment labels as proxy proof that depression symptoms are not severe or persistent." (ECF No. 15 at 3) (citing *Shelley C.*, 71 F.4th at 362-64. The Court agrees. The record as a whole demonstrates too many conflicts that tend to support Plaintiff's mental health claims without an adequate explanation in the RFC assessment. As such, meaningful review is frustrated. *Mascio*, 780 F.3d at 636. Therefore, the ALJ's opinion is not supported by substantial evidence. As such, I will remand the case.

## V.    Conclusion

In sum, the Court agrees with the Platiniff that the ALJ and subsequently the Appeals Council failed to adequately explain Plaintiff's RFC determination. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the

reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED for further proceedings. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge